# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JUDITH ABASI MWILA**
**Personal Representative**
**Of The Estate**
**Of Abbas William Mwila**
**William Abasi Mwila**
**Edina Abasi Mwila**
**Hapiness Abasi Mwila**
**P. O. Box 21231**
**Dar Es Salaam, Tanzania**
            and
**DONTE AKILI MWAIPAPE**
**Donti Akili Mwaipape**
**Victoria Donti Mwaipape**
**Elisha Donti Mwaipape**
**Joseph Donti Mwaipape**
**Debora Donti Mwaipape**
**Nko Donti Mwaipape**
**Monica Akili**
**Akili Musupape**
**c/o Pigangoma**
**P. O. Box 71711**
**Dar Es Salaam, Tanzania**
            and
**VALENTINE MATHEW KATUNDA**
**Abella Valentine Katunda**
**Venant Valentine Mathew Katunda**
**Desidery Valentine Mathew Katunda**
**Veidiana Valentine Katunda**
**Diana Valentine Katunda**
**Edwine Valentine Mathew Katunda**
**Angelina Mathew Felix**
**P. O. Box 111**
**Bukoba Bujugo**
**Kagera, Tanzania**
            and

**EDWARD MATHEW RUTAHESHELWA**
**Elizabeth Mathew Rutaheshelwa**
**Angelina Mathew Rutaheshelwa**
**Happiness Mathew Rutaheshelwa**
**Eric Mathew Rutaheshelwa**
**Enoc Mathew Rutaheshelwa**
**Angelina Mathew –Ferix**
**Mathew Ferix**
**P. O. Box 9123**
**c/o American Embassy**
**Dar Es Salaam, Tanzania**
           **and**
**SAMUEL THOMAS MARCUS**
**Cecilia Samuel Marcus**
**Coronella Samuel Marcus**
**P. O. Box 10296**
**Dar Es Salaam, Tanzania**
           **and**
**HANUNI RAMADHANI NDANGE**
**Personal Representative**
**Of The Estate**
**Of Yusuf Shamte Ndange**
**Abdu Yusuph Shamte Ndange**
**Juma Yusuph Shamte Ndange**
**Mwajabu Yusuph Shamte Ndange**
**P. O. Box 9123**
**c/o American Embassy**
**Dar Es Salaam, Tanzania**
           **and**
**ALLI KINDAMBA NG'OMBE**
**Paulina Mbwanilwa Ng'ombe**
**Mohamed Alli Ng'ombe**
**Kindamba Alli Ng'ombe**
**P. O. Box 9123**
**c/o American Embassy**
**Dar Es Salaam, Tanzania**
           **and**

**SHABANI SAIDI MTULYA**
**Personal Representative**
**Of The Estate**
**Of Mtendeje Rajabu Mtuyla**
**Abdul Shabani Mtuyla**
**Saidi Shabani Mtuyla**
**DSM.Closdv**
**Motco(T) Ltd.**
**Dar Es Salaam, Tanzania**
               **and**
**ADABETH SAID NANG'OKO**
**Personal Representative**
**Of The Estate**
**Of Rogath Saidi Saidi**
**Veronica Alois Saidi**
**John Rogath Saidi**
**Daniel Rogath Saidi**
**Selina Rogath Saidi**
**Idifonce Rogath Saidi**
**Aisha Mawazo**
**P. O. Box 62792**
**Dar Es Salaam, Tanzania**
               **and**
**KULWA RAMADHANI**
**Personal Representative**
**Of The Estate**
**Of Dotio Rmadhani**
**Kassim Ramadhani**
**Renema Ramadhani**
**Upemdo Ramadhani**
**Majaliwa Ramadhani**
**Wengo Ramadhani**
**P. O. Box 65187 Africare**
**Dar Es Salaam, Tanzania**
                         **Plaintiffs**

       **v.**                                           **Civil No.**_____

**THE ISLAMIC REPUBLIC OF IRAN**
**Ministry of Foreign Affairs**
**Khomeini Avenue**
**United Nations Street**
**Tehran, Iran**
               **and**

THE IRANIAN MINISTRY
OF INFORMATION AND SECURITY
Pasdaran Avenue
Golestan Yekom
Tehran, Iran
          and
THE REPUBLIC OF SUDAN
Ministry Of External Affairs
People's Palace
Khartoum, Sudan
          and
THE MINISTRY OF THE INTERIOR
OF THE REPUBLIC OF SUDAN
People's Palace
Khartoum, Sudan
                    **Defendants**


# <u>COMPLAINT</u>

(1)This action is brought by the Plaintiffs, Judith Abasi Mwila, et al., by counsel,

in the individual capacity of each Plaintiff and, as appropriate, in the capacity of each as

personal representative of the estate more particularly described in the caption of this

action for the benefit and on behalf of all those legally entitled to assert a claim pursuant

to 28 U.S.C. § 1605A(a) and (c). This Court exercises subject matter jurisdiction in

accordance with the provisions of 28 United States Code Sections 1330(a), 1331,

1332(a)(2), and 1605A(a). The Court exercises in personam jurisdiction over the parties

designated as Defendants in accordance with the provisions of 28 United States Code

§1605 (a)(7) and §1605A. Venue in this Court is proper in accordance with the provisions

of 28 United States Code Section 1391(f)(4), which provides in pertinent part that a civil

action against a foreign state may be brought in the United States District Court for the

District of Columbia.

(2) Plaintiffs, Judith Abasi Mwila, et al., are citizens of Tanzania, or the estates of citizens of Tanzania through their personal representatives, the beneficiaries of their estates and persons qualified pursuant to 28 U.S.C. § 1605A(a) and (c) for awards of solatium damages, who were employees of entities who were performing under contracts awarded by the United States Government to their employer and were acting within the scope of their employment by that entity at the Embassy of the United States at Dar Es Salaam, Tanzania, who suffered physical injury as a result of a the terrorist attacks upon the Embassy of the United States located in Dar Es Salaam, Tanzania on August 7, 1998. That attack and the attack upon the Embassy of the United States located at Nairobi, Kenya were carried out by Khalafan Khamis Mohamed, a member of the Al Qaeda terrorist group, headed by Osama Bin Laden, which group, together with the Lebanese terrorist group Hezbollah, was given material support in carrying out that attack which included, inter alia, cover, sanctuary, technical assistance, explosive devices and training by the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry Of the Interior of the Republic of Sudan. As a result of these actions, as herein more fully set forth below, a number of American Nationals, Tanzanian Nationals and Kenyan Nationals were killed or injured.

(3) The Defendants, the Islamic Republic of Iran and the Republic of Sudan, are foreign states which were at the time of the acts hereinafter complained of and are to the present designated as state sponsors of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 United States Code Appendix, Section 2405(j)).

(4) The Defendant, the Iranian Ministry of Information and Security, is an agency of the Defendant, the Islamic Republic of Iran. The Defendant, the Ministry of the

Interior of the Sudan, is an agency of the Defendant, the Republic of the Sudan. The activities of these two agencies included, at all times relevant to this action, the prosecution of terrorist acts directed against the nationals of the United States, by and through provision of material support to various terrorist organizations including "Al Qaeda" and "Hezbollah". The Defendants, through their agents, officials and employees, who acted within the scope of their employment or agency, aided and abetted and conspired with those who carried the attacks described below.

(5) Hezbollah is an organization of Lebanese Muslims who are adherents of the Shia or Shiite faction of Islam which has been designated as a terrorist group by the United States Department of State. It represents itself as "an Islamic freedom fighting movement" which views any presence of the United States in the Near East as contrary to the religious beliefs of its members. It advocates the expulsion of the United States from the Near East, and is committed to violent action to that end. At all times relevant to this action, Hezbollah was given extensive support by the Defendants which permitted it to carry out a wide ranging program of terrorism against the United States. At the time of the acts, which give rise to this action, Hezbollah was under the complete operational control of those Defendants, through Iranian Revolutionary Guards units.

(6) Al Qaeda is an organization of Muslim extremists, which has been designated as a terrorist group by the United States Department of State. It operates world wide with the avowed purpose of bringing about the destruction of the United States by violent means.

(7) The Defendant, the Ministry of the Interior of the Republic of the Sudan, is an agency of Defendant, the Republic of the Sudan. Its activities at the time of this

occurrence included the support of terrorist activities directed against foreign targets by terrorist groups operating with cover of the Republic of the Sudan.

(8) The Defendant, the Republic of Sudan, acting through the Defendant, the Ministry of the Interior of the Republic of the Sudan, entered into an arrangement with al Qaeda and Hezbollah under which those organizations received shelter and protection from interference while carrying out planning and training of various persons for terrorist attacks, including the attacks of August 7, 1998. These included an organizational and planning meeting within the Republic of the Sudan of Osama Bin Laden, chief of al Qaeda, and Imad Mughaniyah, chief of Hezbollah's terrorist activities on August 7, 1998[1], with the purpose of planning and carrying out the attacks upon the embassies of the United States in Dar Es Salaam, Tanzania and Nairobi, Kenya, which occurred on August 7, 1998. More specifically, Plaintiffs allege:

a) In the early 1990s, the government of Sudan sent overtures to Bin Laden and Al Qaeda, inviting the group to relocate en mass from Afghanistan to the Sudan. Jamal Ahmed Al-Fadl, a top Al Qaeda lieutenant who served Bin Laden in Afghanistan as well as the Sudan, learned of the impending relationship between Al Qaeda and the Sudanese government for the first time at one of the meetings in Peshwar, Pakistan that occurred between the Sudanese government, Bin Laden and other Al Qaeda members. The representatives of the Sudanese government, promised the support of that government should Al Qaeda come to the Sudan. Al Qaeda thereafter used Sudanese Airways planes to ferry anti-tank rockets and Stinger missiles from Afghanistan to the Sudan.

b) The government of the Sudan is run by President Field Marshall Omar Hassan al-Bashir, the head of state of the Sudan, through an alliance of the military and the National Congress Party, formerly the National Islamic Front.

c) Al-Fadl went to the Sudan to secure residential and commercial property for Al Qaeda. The purpose of some of the property was to provide a safe place to train Al Qaeda militants.

d) Essam Al Riddi, a pilot who worked for Bin Laden in 1993, stated that he purchased a plane for Bin Laden; oversaw its refurbishment; and flew it to Khartoum in 1993.

e) While Al Riddi stayed in Khartoum, he dined with Bin Laden and had several discussions with him. Bin Laden was staying in a large villa in Khartoum, with an office and a guesthouse. The Sudanese government provided security for Al Qaeda. During the planning period for the Dar Es Salaam and Nairobi attacks above referred to, 15-20 armed and uniformed members of the Sudanese Army dressed in Sudanese army fatigues, using jeeps with Sudanese army license plates, were stationed at the villa providing security. Mr. Al-Riddi confirmed that this security function was carried out by the Government of Sudan.

f) Al Qaeda provided Al Riddi with a plane from the Sudan Airlines to ferry militants to Nairobi. Bin Laden discussed the possibility of Al Riddi transporting some Stinger missiles from Pakistan to the Sudan.

g) Bin Laden assured him that the Sudanese and Pakistani intelligence agencies would cooperate with the weapons transfer.

---

[1] Imad Mugniyah died in a car bomb attack in Damascus, Syria on February 13, 2008. No individual or

h) The training that Al Qaeda engaged in the Sudan included explosives training. The loud noises drew the local police after complaints from neighbors and Al Fadl was among those arrested. He was quickly released, due to the close relationship between Al Qaeda, and the Sudanese intelligence service, the Ministry Of The Interior, which is a Defendant in this action. According to Al-Fadl:

> "[W]e call the intelligence office because we have relationship with them, and the intelligence office came and they tell the local police we take care of that, and don't worry about that. And they take us to the jail, and they say you shouldn't do that, we tell you to refresh[2], not to make real explosives."

i) Al-Fadl saw a letter from President al-Bashir that explained the relationship between Al Qaeda and Sudanese intelligence. With the explicit approval of Bin Laden, Al-Fadl also personally worked with the Sudanese intelligence officers.

j) The Sudanese intelligence officers and government officials, at all times, acted within the scope of their office or agency during the activities described in this Complaint.

k) The intelligence officers were organized into a "delegation office" to meet the needs of the Al Qaeda group in the Sudan. There was an explicit fear that agents from foreign governments or informants would disclose Al Qaeda's location and activities in the Sudan. Some of these informants were consequently jailed in the Sudan. Al-Fadl would identify suspicious foreigners to the Sudanese intelligence as Al Qaeda sought to keep its presence and activities in the Sudan secret.

l) The delegation office, staffed with Sudanese intelligence officers, also helped provide security for Al Qaeda and facilitated the movement of weapons in and out

---

organization has admitted participation in the attack as of the date of this Complaint.

of the country. On one particular trip, the weapons were taken out of the country by delivering four crates of weapons to a hangar at a Sudanese military base, and then to a port facility owned by the Sudanese army.

m) The letter from President al-Bashir was absolutely essential to the operations of the Al Qaeda terrorist group, which was secretly training in the Sudan. The letter allowed Al Qaeda members, such as Al Fadl, to bypass tax and customs collection on international shipments and guaranteed their shipments, coming or going, would not be inspected.

n) Weapons and explosive shipments moved through a quay protected by the Sudanese military in Port Sudan into a barracks used by Sudanese armored units and mechanized infantry. The letter would allow shipments from overseas to bypass inspection at a port and then travel back to Khartoum without inspection by the local police at the numerous checkpoints along the way.

o) The delegation office, the Sudanese government's go-between with Al Qaeda, also protected Al Qaeda members, such as Al-Fadl, from the interference of Sudanese immigrations office at the airport. This was important because if Al Qaeda members were caught abroad and their passports were stamped with Sudanese immigration markings, it would be clear to foreign agents where the organization was located.

p) Al Qaeda also set up a number of companies that provided it with critical income so that it to continue its growth and evolution into a lethal organization with global reach. However, Al Qaeda did not come to Sudan to operate as a regular

---

[2] "Refresh" meant refresher courses for the militants who had already received training in the past.

capitalist enterprise. Rather, the purpose of the investment in Sudanese business activity was as adjunct to its mission of aggression against the West, as explicitly stated by Bin Laden himself:

"[O]ur agenda is bigger than business. We not going to make business here, but we need to help the government and the government help our group, and this our purpose."

q) Among the Sudanese companies founded by Al Qaeda were: Laden International Company for import and export; Taba Investment for currency exchange; Hijra Construction Company, which built the largest road existing in Sudan; and the Al Themar al Mubaraka, which ran the farm where Al Qaeda trained its militants in explosives. The Hijra Construction Company purchased explosives for its road and bridge building activities.

r) Al Qaeda also had extensive holdings in Khartoum, including business offices, guesthouses, farms and residential houses. Bin Laden even had a bank account in Khartoum in his true name. Al Qaeda purchased some of the companies directly from the Sudanese government. The funding that these companies provided to Al Qaeda was critical to its survival and continued existence. At a meeting, which included Bin Laden, the fluctuation of Sudanese currency caused great concern as most of Al Qaeda's income was derived from this business activity.

s) Al Qaeda's position regarding the United States was known to the world by 1992 when Bin Laden issued a fatwa against the United States due to its presence in the Gulf region during the First Gulf War and its actions in Somalia. The discussion surrounding the fatwa included an explicit allowance for the murder of innocent

civilians. Al Qaeda provided support to terrorist groups in Somalia, Yemen, the Philippines, Tajikistan, and Pakistan, among others.

t) The partnership forged with the Sudanese government derived benefits for both parties in the manner of a business partnership.   The Sudanese government employed Al Qaeda to manufacture chemical weapons in a section of Khartoum, called Hilat Koko, for use in the genocidal campaign in the southern Sudan.  Al-Fadl traveled to the chemical weapons manufacturing area with a Sudanese military officer, who explained the need for chemical weapons by the Sudanese government.

u) Al Qaeda also provided communications equipment and Kalishnikov rifles for the Sudanese army, founded by the Islamic National Front, to fight the Christian rebels in the south.  Al-Fadl, as part of this arrangement, also worked directly for the Sudanese government.  For example, a Sudanese intelligence office who also worked in the immigration office, approached Al-Fadl and asked him to spy on a government opposition leader.  Al-Fadl arrested the opposition leader and tried to turn him away from his work against the Sudanese government.  The Sudanese intelligence officer advised Al-Fadl to lie to the opposition leader, to tell him that Al-Fadl had quit Al Qaeda and had stopped working with the government.  Al-Fadl reported back to the head of the delegation office, the group of Sudanese intelligence officers that protected Al Qaeda; facilitated communications with the Sudanese government; and provided logistical support.

v) Dr. Abdullah Mohamed Yusef, a member of the Islamic National Front, through which President al-Bashir ran the Sudanese government, organized travel,

documents and funneled economic aid to Al Qaeda while it was located in the Sudan.

w) Al Qaeda entered into a transaction to purchase uranium through the former President of the Sudan, currently an officer in the Sudanese army. The quality of the uranium was tested in Hilat Koko, the section of Khartoum where the government was partnered with Al Qaeda in the manufacture of chemical weapons. Al-Fadl discussed the uranium test with a member of the Sudanese government, whose brother "runs" the building where the chemical weapon manufacture was housed.

x) Without the material support, assistance, and aid provided by Sudanese government officials acting within the scope of their agency, employment or office, Al Qaeda could not have carried out the United States embassy bombings that caused plaintiffs' injuries. Such material support, assistance, and aid fits within the definition of material support as described by 18 U.S.C. § 2339A.

y) The defendants not only knew that Al Qaeda was attempting to conceal itself in the Sudan, but facilitated and furthered Al Qaeda's concealment through the activities of the Sudanese intelligence services. The scale of support that defendants furnished Al Qaeda was substantial. The regime invited Al Qaeda to roost in the Sudan and knew of, at least from 1992 onward, Al Qaeda's anti-US crusade.

z) The then and current regime of Sudan explicitly allied itself with Al Qaeda for no legal or moral purpose. The regime conspired with Al Qaeda in the manufacture of weapons and training of terrorists, all the while knowing of Al Qaeda's anti-US

crusade.  The provision of support to a terrorist organization is illegal and unlawful.  The explicit purpose of their agreement was to make each stronger. The US Embassy bombings greatly enhanced Al Qaeda's worldwide reputation and attracted money, recruits and support from those allied against the United States. Sudan carried out these acts knowing of Al Qaeda's program of terrorist attacks against American and other targets.

(9) Acting upon its knowledge of the attacks about to be carried out by those with whom it had conspired, the Defendant, the Islamic Republic of Iran, withdrew its diplomatic personnel from both Dar Es Salaam and Nairobi on August 6, 1998.  The next day the attack was carried out against the American embassies in both locations.  At Dar Es Salaam, the American embassy was attacked through detonation of materials in a truck including TNT, acetelyne cylinder tanks, bags of nitrate fertilizer and a detonator.  At Nairobi the American Embassy was attacked through detonation of materials being transported by truck including a gas enhanced explosive device.  The Iranian Ministry of Information and Security, the Iranian agents of the Defendants in operational control of Hezbollah operated with high level technical expertise in the use of explosives which would not have been available to the Al Qaeda operatives in the absence of Iranian participation.  The Ministry of the Interior of the Republic of the Sudan provided cover and protection for the organization and training of the persons carrying out the attack as well as venues for these activities.

(10) The actions of the agents and co-conspirators of the Defendants, and those who were substantially aided and abetted by Defendants, as set forth above, inflicted mental distress upon the families of the plaintiffs, who suffered physical injuries,

extrajudicial killings, and assault and battery under state common law. The material support rendered to co-conspirators of the Defendants, and those who were substantially aided and abetted by Defendants, fits within the definition of material support as described by 18 U.S.C. § 2339A.

(11) The formation of Hezbollah and its emergence as a major terrorist organization was the product of direct intervention by Iranian operatives, including the Iranian Revolutionary Guards and the Defendant, the Iranian Ministry of Information. The above referred to activities of Hezbollah were financed, technologically supported and commanded by Iranian military/intelligence operatives.

**COUNT I**
**ESTATE OF ABBAS WILLIAM MWILA**
**CLAIM FOR WRONGFUL DEATH**
**Title 28 United States § 1605A(c)**

(12)Plaintiff, Judith Abasi Mwila, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(13)On August 7, 1998, when the explosive device described above was detonated, Abbas William Mwila, an employee of Ultimate Security Limited and an individual performing under the contract awarded by the United States Government to said employer, while acting within the scope of his employment as a security guard at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered fatal injuries. The death of Abbas William Mwila was caused by a willful and deliberate act of extrajudicial killing. The Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Al Qaeda that resulted in the death of Abbas William Mwila. Those agents were at all times acting as part of Al Qaeda and with the

material and knowing support of scope of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

(14)The minor beneficiaries of Abbas William Mwila who survived him, namely, William Abasi Mwila, Edina Abasi Mwila, and Hapiness Abasi Mwila, and his wife, Judith Abasi Mwila, as a direct and proximate consequence of the actions of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable suffered pecuniary loss, including financial assistance to said beneficiaries, loss of accretions to the Estate of Abbas William Mwila, and the loss of the care and parental assistance of William Abasi Mwila, and decedent's children, Abbas William Mwila, Edina Abasi Mwila, and Hapiness Abasi Mwila, and his wife Judith Abasi Mwila, have each thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Judith Abasi Mwila, demands judgment for the benefit of the Estate of Abbas William Mwila, and the beneficiaries of that Estate, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT II
## ESTATE OF ABBAS WILLIAM MWILA
## SURVIVAL CLAIM
## Title 28 United States § 1605A(c)

(15) Plaintiff, Judith Abasi Mwila, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(16) Before death, Abbas William Mwila, suffered extreme bodily pain and suffering, as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Judith Abasi Mwila, demands judgment for the benefit of the Estate of Abbas William Mwila, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLATD ($10,000,000.00),** besides costs.

### COUNT III
### CLAIMS OF WILLIAM ABASI MWILA, EDINA ABASI MWILA, HAPINESS ABASI MWILA AND JUDITH ABASI MWILA FOR SOLATIUM PURSUANT TO
### Title 28 United States § 1605A(c)

(17)Plaintiff, Judith Abasi Mwila, on her own behalf and on behalf of William Abasi Mwila, Edina Abasi Mwila and Hapiness Abasi Mwila repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(18)As a direct consequence of the actions of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, Judith Abasi Mwila,  William Abasi Mwila, Edina Abasi Mwila and Hapiness Abasi Mwila, have each suffered extraordinary grief and mental anguish when the defendants, acting with their material support and through their agents in Al Qaeda, on or about August 7, 1998,  carried out a suicide attack upon the Embassy of the United States at Dar Es Salaam, by driving a truck

carrying explosives, into the proximity of the Embassy Building, guarded by Decedent

and others employed by Ultimate Security Limited, and by their conduct they

intentionally inflicted physical injury resulting in the death Decedent and numerous

others, and severe emotional distress upon Judith Abasi Mwila,  William Abasi Mwila,

Edina Abasi Mwila and Hapiness Abasi Mwila. The conduct of these Defendants was

above described was so extreme and outrageous as to exceed all possible bounds of

decency and must be regarded as atrocious and utterly intolerable in a civilized

community. Judith Abasi Mwila,  William Abasi Mwila, Edina Abasi Mwila and

Hapiness Abasi Mwila have each thereby suffered damages in the amount of ten million

dollars.

WHEREFORE, Plainiff, Plaintiff, Judith Abasi Mwila, on her own behalf and on

behalf of William Abasi Mwila, Edina Abasi Mwila and Hapiness Abasi Mwila demands

judgment for each in the amount of **TEN MILLION DOLLARS ($10,000,000.00),**

besides costs.


### COUNT IV
### CLAIM OF DONTE AKILI  MWAIPAPE
### FOR PERSONAL INJURY RESULTING
### FROM ASSAULT AND BATTERY
### PURSUANT TO 28 U.S.C. §1605A

(19) Plaintiff, Donte Akili Mwaipape, a resident of the Tanzania at the time of the

occurrence alleged, repeats and re-alleges each and every allegation set forth above with

equal effect as if alleged herein.

(20) On August 7, 1998, when the explosive device described above was

detonated at Dar Es Salaam, Donte Akili Mwaipape, an employee of Ultimate Security

Limited and an individual performing under the contract awarded by the United States Government to said employer, while acting within the scope of his employment as a security guard at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered severe and permanent injuries, including, inter alia, a concussion, permanent partial loss of hearing, blast burns, severe lacerations, partial loss of vision, swelling of feet, permanent scarring, and severe post traumatic stress disorder. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(21) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff, James Owens has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, and has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Donte Akili Mwaipape, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan,

the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of

Information and Security, in the amount of **TEN MILLION DOLLARS**

**($10,000,000.00),** besides costs.

**COUNT V**
**CLAIM OF DONTE AKILI MWAIPAPE, VICTORIA DONTI,**
**ELISHA DONTI, JOSEPH DONTE, DEBORA DONTI,**
**SAMUEL DONTI, NKO DONTI, MONICA AKILI and AKILI MUSUPAPE**
**FOR SOLATIUM PURSUANT TO 28 U.S.C. §1605A**

(22) Plaintiffs, Donti Akili Mwaipape, Victoria Donti, Elisha Donti, Joseph Donti,

Debora Donti, Nko Donti, Monica Akili and Akili Musupape repeat and re-allege each

and every allegation set forth above with like effect as if alleged herein.

(23) As a direct and intended consequence of the intentional and reckless actions

of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic

of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and

the Iranian Ministry of Information and Security, their co-conspirators and those who

were substantially aided and abetted by Defendants who carried out the attacks above

alleged, the Plaintiffs, Donti Akili Mwaipape, his wife, Victoria Donti, his children,

Elisha Donti, Joseph Donti, Debora Donti, and Nko Donti, his mother, Monica Akili and

his father, Akili Musupape were caused severe mental distress, which has required

continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they

have thereby each suffered damages in the amount of ten million dollars.

**WHEREFORE,** Plaintiffs, Donti Akili Mwaipape, Victoria Donti, Elisha Donti, Joseph Donti, Debora Donti, Nko Donti, Monica Akili and Akili Musupape, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT VI
## CLAIM OF VALENTINE MATHEW KATUNDA
## FOR PERSONAL INJURY RESULTING
## FROM ASSAULT AND BATTERY
## PURSUANT TO 28 U.S.C. §1605A

(24) Plaintiff, Valentine Mathew Katunda, a resident of the Tanzania at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(25) On August 7, 1998, when the explosive device described above was detonated at Dar Es Salaam, Valentine Mathew Katunda, an employee of Ultimate Security Limited and an individual performing under the contract awarded by the United States Government to said employer, while acting within the scope of his employment as a security guard at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered severe and permanent injuries, including, inter alia, a concussion, broken teeth, permanent partial loss of hearing, right shoulder injury, headaches, blast burns, severe lacerations, scarring and permanent, and severe post traumatic stress disorder with nightmares, phobias and constant fear. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These

injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(26) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, and has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Valentine Mathew Katunda, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

**COUNT VII**
**CLAIM OF VALENTINE MATHEW KATUNDA, ABELLA**
**VALENTINE KATUNDA, VENANT VALENTINE MATHEW KATUNDA,**
**DESIDERY VALENTINE MATHEW KATUNDA, VEIDIANA**
**VALENTINE KATUNDA, DIANA VALENTINE KATUNDA,**
**EDWINE VALENTINE KATUNDA, MATHEW KATUNDA**
**AND ANGELINA MATHEW FELIX**
**FOR SOLATIUM PURSUANT TO 28 U.S.C. §1605A**

(27) Plaintiffs, Valentine Mathew Katunda, Abella Valentine Katunda, Venant Valentine Mathew Katunda, Desidery Valentine Mathew Katunda, Veidiana Valentine Katunda, Diana Valentine Katunda, Edwine Valentine Mathew Katunda and Angelina Mathew Felix repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(28) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs, Valentine Mathew Katunda, his wife, Abella Valentine, his children, Venant Valentine Mathew Katunda, Desidery Valentine Mathew Katunda, Veidiana Valentine, Diana Valentine, and Edwine Valentine Mathew Katunda, and his mother, Angelina Mathew Felix, were caused severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have thereby each suffered damages in the amount of ten million dollars.

**WHEREFORE,** Plaintiffs, Valentine Mathew Katunda, Abella Valentine Katunda, Venant Valentine Mathew Katunda, Desidery Valentine Mathew Katunda, Veidiana Valentine Katunda, Diana Valentine Katunda, Edwine Valentine Mathew Katunda and Angelina Mathew Felix, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of

Information and Security, in the amount of **TEN MILLION DOLLARS**

**($10,000,000.00)**, besides costs.


### COUNT VIII
### CLAIM OF EDWARD MATHEW RUTAHESHELWA
### FOR PERSONAL INJURY RESULTING
### FROM ASSAULT AND BATTERY
### PURSUANT TO 28 U.S.C. §1605A

(29) Plaintiff, Edward Mathew Rutaheshelwa, a resident of the Tanzania at the

time of the occurrence alleged, repeats and re-alleges each and every allegation set forth

above with equal effect as if alleged herein.

(30) On August 7, 1998, when the explosive device described above was

detonated at Dar Es Salaam, Edward Mathew Rutaheshelwa, an employee of Ultimate

Security Limited and an individual performing under the contract awarded by the United

States Government to said employer, while acting within the scope of his employment as

a security guard at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered

severe and permanent injuries, including, inter alia, a concussion, permanent partial loss

of hearing, permanent partial loss of sight, an injury to his back, headaches, blast burns,

severe lacerations, scarring and permanent and severe post traumatic stress disorder with

nightmares, phobias and constant fear. Plaintiff continues to suffer severe back pain,

partial loss of hearing and sight, a recurrent cough and respiratory distress. The explosion

was intended to cause harmful contact with plaintiff and put him in reasonable

apprehension of imminent battery. These injuries were caused by a willful and deliberate

act of persons who had been materially assisted by Defendants for the purpose of

inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the

United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(31) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, and has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Edward Mathew Rutaheshelwa, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.


### COUNT IX
### CLAIM OF EDWARD MATHEW RUTAHESHELWA, ELIZABETH MATHEW RUTAHESHELWA, ANGELINA MATHEW RUTAHESHELWA, HAPPINESS MATHEW RUTAHESHELWA, ERIC MATHEW RUTAHESHELWA, ENOC MATHEW RUTAHESHELWA, ANGELINA MATHEW-FERIX AND MATHEW FERIX FOR SOLATIUM PURSUANT TO 28 U.S.C. §1605A

(32) Plaintiffs, Edward Mathew Rutaheshelwa, Elizabeth Mathew Rutaheshelwa,

Angelina Mathew Rutaheshelwa, Happiness Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa, Enoc Mathew Rutaheshelwa, Angelina Mathew –Ferix and Mathew Ferix repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(33) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs, Edward Mathew Rutaheshelwa, his wife, Elizabeth Mathew Rutaheshelwa, his children, Angelina Mathew Rutaheshelwa, Happiness Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa and Enoc Mathew Rutaheshelwa, his mother, Angelina Mathew –Ferix and his father, Mathew Ferix, were caused severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have each thereby suffered damages in the amount of ten million dollars.

**WHEREFORE,** Plaintiffs, Edward Mathew Rutaheshelwa, Elizabeth Mathew Rutaheshelwa, Angelina Mathew Rutaheshelwa, Happiness Mathew Rutaheshelwa, Eric Mathew Rutaheshelwa, Enoc Mathew Rutaheshelwa, Angelina Mathew –Ferix and Mathew Ferix, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT X
## CLAIM OF SAMUEL THOMAS MARCUS
## FOR PERSONAL INJURY RESULTING
## FROM ASSAULT AND BATTERY
## PURSUANT TO 28 U.S.C. §1605A

(34) Plaintiff, Samuel Thomas Marcus, a resident of the Tanzania at the time of

the occurrence alleged, repeats and re-alleges each and every allegation set forth above

with equal effect as if alleged herein.

(35) On August 7, 1998, when the explosive device described above was

detonated at Dar Es Salaam, Samuel Thomas Marcus, was an employee of the United

States Government. While acting within the scope of his employment as a motor vehicle

maintenance technician at the Embassy of the United States at Dar Es Salaam, Tanzania,

Plaintiff suffered severe and permanent injuries, including, inter alia, a concussion,

permanent partial loss of hearing, permanent partial loss of sight, an injury to his back,

headaches, blast burns, severe lacerations particularly to his right leg including glass

particles embedded in his body, scarring and permanent and severe post traumatic stress

disorder with nightmares, phobias and constant fear. Plaintiff continues to suffer severe

right leg pain, referred pain from his back to his right leg, partial loss of sight, permanent

scarring and post traumatic stress disorder. The explosion was intended to cause harmful

contact with plaintiff and put him in reasonable apprehension of imminent battery.  These

injuries were caused by a willful and deliberate act of persons who had been materially

assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff

and others and by so doing to intimidate the United States, and to cause its withdrawal

from the Near East and Africa. Those persons were at all times acting with the material

support of the Defendants and with the concurrence of the Defendants, the Islamic

Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the

Sudan and the Ministry of the Interior of the Republic of the Sudan.

(36) As a direct and proximate consequence of the intentional acts of the agents of

the Defendants as above set forth and the injuries thereby inflicted, Plaintiff has been

required to undergo extensive medical treatment, nursing care, and other treatment, for

which he has been required to expend funds, has occasioned a loss of wages and has

endured great pain and suffering, and has thereby suffered damages in the amount of

$10,000,000.00.

**WHEREFORE,** Plaintiff, Samuel Thomas Marcus, demands judgment jointly

and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the

Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry

of Information and Security, in the amount of **TEN MILLION DOLLARS**

**($10,000,000.00),** besides costs.

**COUNT XI**
**CLAIM OF SAMUEL THOMAS MARCUS,**
**CECILIA SAMUEL MARCUS AND CORONELLA SAMUEL MARCUS**
**FOR SOLATIUM PURSUANT TO 28 U.S.C. §1605A**

(37) Plaintiffs, Samuel Thomas Marcus, Cecilia Samuel Marcus and Coronella

Samuel Marcus repeat and re-allege each and every allegation set forth above with like

effect as if alleged herein.

(38) As a direct and intended consequence of the intentional and reckless actions

of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic

of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and

the Iranian Ministry of Information and Security, their co-conspirators and those who

were substantially aided and abetted by Defendants who carried out the attacks above

alleged, the Plaintiffs, Samuel Thomas Marcus, Cecilia Samuel Marcus and Coronella

Samuel Marcus, were caused severe mental distress, which has required continuing

treatment, which will continue for the balance of the Plaintiffs' lives, and they have

thereby each suffered damages in the amount of ten million dollars.

**WHEREFORE,** Plaintiffs, Samuel Thomas Marcus, Cecilia Samuel Marcus and

Coronella Samuel Marcus, each demand judgment jointly and severally, against the

Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the

Interior of the Republic of the Sudan and the Iranian Ministry of Information and

Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

**COUNT XII**
**ESTATE OF YUSUF SHAMTE NDANGE**
**CLAIM FOR WRONGFUL DEATH**
**Title 28 United States § 1605A(c)**

(39)Plaintiff, Hanuni Ramadhani Ndange, Personal Representative

Of The Estate Of Yusuf Shamte Ndange, repeats and re-alleges each and every allegation

set forth above with equal effect as if alleged herein.

(40)On August 7, 1998, when the explosive device described above was

detonated, Yusuf Shamte Ndange, was an employee the United States Government.

While acting within the scope of his employment as a chauffeur/truck driver at the

Embassy of the United States at Dar Es Salaam, Tanzania, Plaintiff suffered fatal injuries.

The death of  Yusuf Shamte Ndange was caused by a willful and deliberate act of

extrajudicial killing. The Defendants, through their agents, financed the attack, planned

the attack and rendered material support to the activities of Al Qaeda that resulted in the

death of Yusuf Shamte Ndange. Those agents were at all times acting as part of Al Qaeda and with the material and knowing support of scope of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

(41)The beneficiaries of Yusuf Shamte Ndange who survived him, namely, his children, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange, and his wife, Hanuni Ramadhani Ndange, as a direct and proximate consequence of the actions of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, suffered pecuniary loss, including financial assistance to said beneficiaries, loss of accretions to the Estate of Yusuf Shamte Ndange, and the loss of the care and parental assistance of Yusuf Shamte Ndange, and decedent's children, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange, and his wife, Hanuni Ramadhani Ndange, have each thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Hanuni Ramadhani Ndange, demands judgment for the benefit of the Estate of Yusuf Shamte Ndange, and the beneficiaries of that Estate, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XIII
## ESTATE OF YUSEF SHAMTE NDANGE
## SURVIVAL CLAIM
## Title 28 United States § 1605A(c)

(42) Plaintiff, Judith Hanuni Ramadhani Ndange, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(43) Before death, Yusuf Shamte Ndange, suffered extreme bodily pain and suffering, as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Judith Hanuni Ramadhani Ndange, demands judgment for the benefit of the Estate of Yusuf Shamte Ndange, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00)**, besides costs.

## COUNT XIV
## CLAIMS OF ABDU YUSUPH SHAMTE NDANGE, JUMA
## YUSUPH SHAMTE NDANGE, MWAJABU YUSUPH SHAMTE
## NDANGE AND HANNUI RAMADHANI NDANGE
## FOR SOLATIUM PURSUANT TO
## Title 28 United States § 1605A(c)

(44) Plaintiff, Hanuni Ramadhani Ndange, on her own behalf and on behalf of Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(45)As a direct consequence of the actions of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, Hanuni Ramadhani Ndange, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange, have each suffered extraordinary grief and mental anguish when the defendants, acting with their material support and through their agents in Al Qaeda, on or about August 7, 1998,  carried out a suicide attack upon the Embassy of the United States at Dar Es Salaam, by driving a truck carrying explosives, into the proximity of the Embassy Building where decedent was employed, and by their conduct they intentionally inflicted physical injury resulting in the death of Decedent and numerous others, and severe emotional distress upon Hanuni Ramadhani Ndange, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange. The conduct of these Defendants was above described was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Hanuni Ramadhani Ndange, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange have each thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plainiff, Plaintiff, Hanuni Ramadhani Ndange, on her own behalf and on behalf of Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange demands judgment for each in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XV
## CLAIM OF ALLI KINDAMBA NG'OMBE
## FOR PERSONAL INJURY RESULTING
## FROM ASSAULT AND BATTERY
## PURSUANT TO 28 U.S.C. §1605A

(46) Plaintiff, Alli Kindamba Ng'ombe, a resident of the Tanzania at the time of the occurrence alleged, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(47) On August 7, 1998, when the explosive device described above was detonated at Dar Es Salaam, Alli Kindamba Ng'ombe, an employee of Splendid Cleaners Company, and an individual performing under the contract awarded by the United States Government to said employer, while acting within the scope of his employment as a premises cleaner at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered severe and permanent injuries, including, inter alia, a concussion, blast burns, severe lacerations caused by flying glass and shrapnel on his head, hands and knees, suffered severe electric shock inflicted by live wiring which had been blown out of the ceiling and walls, scarring and permanent, severe post traumatic stress disorder. He continues to suffer heart beat irregularities caused by the severe electric shock, severe headaches and pain from his injuries. The explosion was intended to cause harmful contact with plaintiff and put him in reasonable apprehension of imminent battery. These injuries were caused by a willful and deliberate act of persons who had been materially assisted by Defendants for the purpose of inflicting physical injuries upon this Plaintiff and others and by so doing to intimidate the United States, and to cause its withdrawal from the Near East and Africa. Those persons were at all times acting with the material support of the Defendants and with the concurrence of the Defendants, the Islamic

Republic of Iran, the Iranian Ministry of Information and Security, the Republic of the Sudan and the Ministry of the Interior of the Republic of the Sudan.

(48) As a direct and proximate consequence of the intentional acts of the agents of the Defendants as above set forth and the injuries thereby inflicted, Plaintiff has been required to undergo extensive medical treatment, nursing care, and other treatment, for which he has been required to expend funds, has occasioned a loss of wages and has endured great pain and suffering, and has thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Alli Kindamba Ng'ombe, demands judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.


### COUNT XVI
### CLAIM OF ALLI KINDAMBA NG'OMBE, PAULINA MBWANILWA NG'OMBE, MOHAMMED ALLI NG'OMBE AND KINDAMBA ALLI NG'OMBE FOR SOLATIUM PURSUANT TO 28 U.S.C. §1605A

(49) Plaintiffs, Alli Kindamba Ng'ombe, Paulina Mbwanilwa Ng'ombe, Mohamed Alli Ng'ombe and Kindamba Alli Ng'ombe, repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

(50) As a direct and intended consequence of the intentional and reckless actions of the Defendants, conduct that is intolerable in a civilized society, the Islamic Republic of Iran, the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan and the Iranian Ministry of Information and Security, their co-conspirators and those who were substantially aided and abetted by Defendants who carried out the attacks above alleged, the Plaintiffs, Donti Akili Mwaipape, his wife, Victoria Donti, his children, Elisha Donti, Joseph Donti, Debora Donti, and Nko Donti, his mother, Monica Akili and his father, Akili Musupape were caused severe mental distress, which has required continuing treatment, which will continue for the balance of the Plaintiffs' lives, and they have thereby suffered damages each in the amount of twenty million dollars.

**WHEREFORE,** Plaintiffs, Alli Kindamba Ng'ombe,  Paulina Mbwanilwa Ng'ombe, Mohamed Alli Ng'ombe and Kindamba Alli Ng'ombe, each demand judgment jointly and severally, against the Defendants, the Islamic Republic of Iran, the Republic of the Sudan, the Ministry of the Interior of the Republic of the Sudan and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.


### COUNT XVII
### ESTATE OF MTENDEJE RAJABU MTULYA
### CLAIM FOR WRONGFUL DEATH
### Title 28 United States § 1605A(c)

(51)Plaintiff, Shabani Saidi Mtulya, Personal Representative Of The Estate Of Mtendeje Rajabu Mtula, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(52)On August 7, 1998, when the explosive device described above was detonated, Mtendeje Rajabu Mtula, an employee of Ultimate Security Limited and an individual performing under the contract awarded by the United States Government to said employer, while acting within the scope of her employment as a security guard at the Embassy of the United States at Dar Es Salaam, Tanzania, suffered fatal injuries. The death of Mtendeje Rajabu Mtula  was caused by a willful and deliberate act of extrajudicial killing. The Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Al Qaeda that resulted in the death of Mtendeje Rajabu Mtula. Those agents were at all times acting as part of Al Qaeda and with the material and knowing support of scope of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

(53)The beneficiaries of Mtendeje Rajabu Mtula who survived her, namely, her husband, Shabani Saidi Mtulya, and her children, Abdul Shabani Mtula and Saidi Shabani Mtula, as a direct and proximate consequence of the actions of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable suffered pecuniary loss, including financial assistance to said beneficiaries, loss of accretions to the Estate of Mtendeje Rajabu Mtula, and the loss of the care and parental assistance of Mtendeje Rajabu Mtula, and her husband, Shabani Saidi Mtulya, and decedent's children, Abdul Shabani Mtula and Saidi Shabani Mtula, have each thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Shabani Saidi Mtulya, demands judgment for the benefit of the Estate of Mtendeje Rajabu Mtula, and the beneficiaries of that Estate,

jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of

The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian

Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS**

**($5,000,000.00), besides costs.**


### COUNT XVIII
### ESTATE OF MTENDEJE RAJABU MTULYA
### SURVIVAL CLAIM
### Title 28 United States § 1605A(c)

(54) Plaintiff, Shabani Saidi Mtulya, repeats and re-alleges each and every

allegation set forth above with like effect as if alleged herein.

(55) Before death, Mtendeje Rajabu Mtula, suffered extreme bodily pain and

suffering, as a result of the actions described above which were undertaken by the agents

of the Defendants, and the Decedent thereby suffered damages in the amount of

$10,000,000.00.

**WHEREFORE,** Plaintiff, Shabani Saidi Mtulya, demands judgment for the

benefit of the Estate of Mtendeje Rajabu Mtula, jointly and severally, against the

Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of

Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security,

in the amount of **TEN MILLION DOLLATD ($10,000,000.00), besides costs.**


### COUNT XIX
### CLAIMS OF SHABANI SAIDI MTULYA , ABDUL
### SHABANI MTULYA AND SAIDI SHABANI MTULYA
### FOR SOLATIUM PURSUANT TO
### Title 28 United States § 1605A(c)

(56)Plaintiff, Shabani Saidi Mtulya, on his own behalf and on behalf of Abdul Shabani Mtulya and Saidi Shabani Mtulya, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(57)As a direct consequence of the actions of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, Shabani Saidi Mtulya, Abdul Shabani Mtulya and Saidi Shabani Mtulya, have each suffered extraordinary grief and mental anguish when the defendants, acting with their material support and through their agents in Al Qaeda, on or about August 7, 1998, carried out a suicide attack upon the Embassy of the United States at Dar Es Salaam, by driving a truck carrying explosives, into the proximity of the Embassy Building, guarded by Decedent and others employed by Ultimate Security Limited, and by their conduct they intentionally inflicted physical injury resulting in the death Decedent and numerous others, and severe emotional distress upon Shabani Saidi Mtulya, Abdul Shabani Mtulya and Saidi Shabani Mtulya. The conduct of these Defendants was above described was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Shabani Saidi Mtulya, Abdul Shabani Mtulya and Saidi Shabani Mtulya have each thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plainiff, Plaintiff, Shabani Saidi Mtulya, on his own behalf and on behalf of Abdul Shabani Mtulya and Saidi Shabani Mtulya demands judgment for each in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XX
### ESTATE OF ROGATH SAIDI SAIDI
### CLAIM FOR WRONGFUL DEATH
### Title 28 United States § 1605A(c)

(58)Plaintiff,Adabeth Said Nang'oko, Personal Representative Of The Estate Of

Rogath Saidi Saidi, repeats and re-alleges each and every allegation set forth above with

equal effect as if alleged herein.

(59)On August 7, 1998, when the explosive device described above was

detonated, Rogath Saidi Saidi, was an employee the United States Government. While

acting within the scope of his employment as a  motor vehicle driver at the Embassy of

the United States at Dar Es Salaam, Tanzania, Plaintiff suffered fatal injuries. The death

of  Rogath Saidi Saidi was caused by a willful and deliberate act of extrajudicial killing.

The Defendants, through their agents, financed the attack, planned the attack and

rendered material support to the activities of Al Qaeda that resulted in the death of

Rogath Saidi Saidi. Those agents were at all times acting as part of Al Qaeda and with the

material and knowing support of scope of the Defendants, the Republic of the Sudan, the

Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the

Iranian Ministry of Information and Security.

(60)The beneficiaries of Rogath Saidi Saidi who survived him, namely, his

children, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath

Saidi, his wife, Veronica Alois Saidi, his mother, Aisha Mawazo, and his brother,

Adabeth Said Nang'oko, as a direct and proximate consequence of the actions of the

Defendants hereinabove described, for which the Defendants are vicariously, jointly and

severally liable, suffered pecuniary loss, including financial assistance to said

beneficiaries, loss of accretions to the Estate of Rogath Saidi Saidi, and the loss of the care and parental assistance of Rogath Saidi Saidi, and decedent's children, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, his wife, Veronica Alois Saidi, his mother, Aisha Mawazo, and his brother, Adabeth Said Nang'oko, have thereby suffered damages in the amount of $10,000,000.00.

WHEREFORE, Plaintiff, Adabeth Said Nang'oko, demands judgment for the benefit of the Estate of Rogath Saidi Saidi, and the beneficiaries of that Estate, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.


## COUNT XXI
## ESTATE OF YUSEF ROGATH SAIDI SAIDI
## SURVIVAL CLAIM
## Title 28 United States § 1605A(c)

(61) Plaintiff, Adabeth Said Nang'oko, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(62) Before death, Rogath Saidi Saidi, suffered extreme bodily pain and suffering, as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent thereby suffered damages in the amount of $10,000,000.00.

WHEREFORE, Plaintiff, Adabeth Said Nang'oko, demands judgment for the benefit of the Estate of Rogath Saidi Saidi, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the

Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLATD ($10,000,000.00)**, besides costs.


## COUNT XXII
## CLAIMS OF
## ADABETH SAID NANG'OKO, JOHN ROGATH SAIDI, DANIEL ROGATH SAIDI, SELINA ROGATH SAIDI, IDAFONCE ROGATH SAIDI, VERONICA ALOIS SAIDI AND AISHA MAWAZO FOR SOLATIUM PURSUANT TO
## Title 28 United States § 1605A(c)

(63)Plaintiff, Adabeth Said Nang'oko, on his own behalf and on behalf of John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(64)As a direct consequence of the actions of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, Adabeth Said Nang'oko, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo have each suffered extraordinary grief and mental anguish when the defendants, acting with their material support and through their agents in Al Qaeda, on or about August 7, 1998, carried out a suicide attack upon the Embassy of the United States at Dar Es Salaam, by driving a truck carrying explosives, into the proximity of the Embassy Building where decedent was employed, and by their conduct they intentionally inflicted physical injury resulting in the death of Decedent and numerous others, and severe emotional distress upon Hanuni Ramadhani Ndange, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange.

The conduct of these Defendants was above described was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Adabeth Said Nang'oko, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo have each thereby suffered damages in the amount of ten million dollars.

**WHEREFORE,** Plainiff, . Adabeth Said Nang'oko, on his own behalf and on behalf of John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo, demands judgment for each in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.


## COUNT XXIII
## ESTATE OF ROGATH SAIDI SAIDI
## CLAIM FOR WRONGFUL DEATH
### Title 28 United States § 1605A(c)


(65)Plaintiff,Adabeth Said Nang'oko, Personal Representative Of The Estate Of Rogath Saidi Saidi, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(66)On August 7, 1998, when the explosive device described above was detonated, Rogath Saidi Saidi, was an employee the United States Government. While acting within the scope of his employment as a motor vehicle driver at the Embassy of the United States at Dar Es Salaam, Tanzania, decedent suffered fatal injuries. The death of Rogath Saidi Saidi was caused by a willful and deliberate act of extrajudicial killing. The Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Al Qaeda that resulted in the death of

Rogath Saidi Saidi. Those agents were at all times acting as part of Al Qaeda and with the material and knowing support of scope of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

(67) The beneficiaries of Rogath Saidi Saidi who survived him, namely, his children, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, his wife, Veronica Alois Saidi, his mother, Aisha Mawazo, and his brother, Adabeth Said Nang'oko, as a direct and proximate consequence of the actions of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, suffered pecuniary loss, including financial assistance to said beneficiaries, loss of accretions to the Estate of Rogath Saidi Saidi, and the loss of the care and parental assistance of Rogath Saidi Saidi, and decedent's children, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, his wife, Veronica Alois Saidi, his mother, Aisha Mawazo, and his brother, Adabeth Said Nang'oko, have thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Adabeth Said Nang'oko, demands judgment for the benefit of the Estate of Rogath Saidi Saidi, and the beneficiaries of that Estate, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XXIV
## ESTATE OF YUSEF ROGATH SAIDI SAIDI
## SURVIVAL CLAIM
### Title 28 United States § 1605A(c)

(68) Plaintiff, Adabeth Said Nang'oko, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(69) Before death, Rogath Saidi Saidi, suffered extreme bodily pain and suffering, as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent thereby suffered damages in the amount of $10,000,000.00.

**WHEREFORE,** Plaintiff, Adabeth Said Nang'oko, demands judgment for the benefit of the Estate of Rogath Saidi Saidi, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XXV
## CLAIMS OF
## ADABETH SAID NANG'OKO, JOHN ROGATH SAIDI, DANIEL
## ROGATH SAIDI, SELINA ROGATH SAIDI, IDAFONCE ROGATH
## SAIDI, VERONICA ALOIS SAIDI AND AISHA MAWAZO
## FOR SOLATIUM PURSUANT TO
### Title 28 United States § 1605A(c)

(70) Plaintiff, Adabeth Said Nang'oko, on his own behalf and on behalf of John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(71) As a direct consequence of the actions of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of

Iran and the Iranian Ministry of Information and Security, Adabeth Said Nang'oko, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo have each suffered extraordinary grief and mental anguish when the defendants, acting with their material support and through their agents in Al Qaeda, on or about August 7, 1998, carried out a suicide attack upon the Embassy of the United States at Dar Es Salaam, by driving a truck carrying explosives, into the proximity of the Embassy Building where decedent was employed, and by their conduct they intentionally inflicted physical injury resulting in the death of Decedent and numerous others, and severe emotional distress upon Hanuni Ramadhani Ndange, Abdu Yusuph Shamte Ndange, Juma Yusuph Shamte Ndange and Mwajabu Yusuph Shamte Ndange. The conduct of these Defendants was above described was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Adabeth Said Nang'oko, John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo have each thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plainiff, . Adabeth Said Nang'oko, on his own behalf and on behalf of John Rogath Saidi, Daniel Rogath Saidi, Selina Rogath Saidi, Idifonce Rogath Saidi, Veronica Alois Saidi and Aisha Mawazo, demands judgment for each in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XXVI
## ESTATE OF DOTIO RAMADHANI
## CLAIM FOR WRONGFUL DEATH
### Title 28 United States § 1605A(c)

(72) Plaintiff, Kulma Ramadhani, Personal Representative Of The Estate Of Dotio Ramadhani, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

(73) On August 7, 1998, when the explosive device described above was detonated, Dotio Ramadhani, was an employee the United States Government. While acting within the scope of his employment as a gardener at the Embassy of the United States at Dar Es Salaam, Tanzania, Plaintiff suffered fatal injuries. The death of Dotio Ramadhani was caused by a willful and deliberate act of extrajudicial killing. The Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Al Qaeda that resulted in the death of Rogath Saidi Saidi. Those agents were at all times acting as part of Al Qaeda and with the material and knowing support of scope of the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

(74) The beneficiaries of Dotio Ramadhani who survived him, namely, his child, Wengo Ramadhani, his sisters, Kassim Ramadhani, Renema Ramadhani, Upendo Ramadhani and Majaliwa Ramadhani, and his brother, Kulma Ramadhani, as a direct and proximate consequence of the actions of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, suffered pecuniary loss, including financial assistance to said beneficiaries, loss of accretions to the Estate of

Dotio Ramadhani, and the loss of the care and assistance of him and have each thereby suffered damages in the amount of $10,000,000.00.

WHEREFORE, Plaintiff, Kulma Ramadhani, demands judgment for the benefit of the Estate of Dotio Ramadhani, and the beneficiaries of that Estate, jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

## COUNT XXVII
### ESTATE OF DOTIO RAMADHANI
### SURVIVAL CLAIM
### Title 28 United States § 1605A(c)

(75) Plaintiff, Kulma Ramadhani, repeats and re-alleges each and every allegation set forth above with like effect as if alleged herein.

(76) Before death, Dotio Ramadhani, suffered extreme bodily pain and suffering, as a result of the actions described above which were undertaken by the agents of the Defendants, and the Decedent thereby suffered damages in the amount of $10,000,000.00.

WHEREFORE, Plaintiff, Kulma Ramadhani, demands judgment for the benefit of the Estate of Dotio Ramadhani jointly and severally, against the Defendants, the Republic of the Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, in the amount of **TEN MILLION DOLLATD ($10,000,000.00),** besides costs.

## COUNT XXVIII
## CLAIMS OF
## WENGO RAMADHANI, KASSIM RAMADHANI,
## RENEMA RAMADHANI, UPENDO RAMADHANI
## MAJALIWA RAMADHANI AND KULMAR RAMADHANI
## FOR SOLATIUM PURSUANT TO
## Title 28 United States § 1605A(c)

(77)Plaintiff, Kulma Ramadhani, on his own behalf and on behalf of

Wengo Ramadhani, Kassim Ramadhani, Renema Ramadhani, Upendo Ramadhani,

Majaliwa Ramadhani, repeats and re-alleges each and every allegation set forth above

with like effect as if alleged herein.

(78)As a direct consequence of the actions of the Defendants, the Republic of the

Sudan, the Ministry Of The Interior Of The Republic Of Sudan, the Islamic Republic of

Iran and the Iranian Ministry of Information and Security, Kulma Ramadhani, Wengo

Ramadhani, Kassim Ramadhani, Renema Ramadhani, Upendo Ramadhani, Majaliwa

Ramadhani, have each suffered extraordinary grief and mental anguish when the

defendants, acting with their material support and through their agents in Al Qaeda, on or

about August 7, 1998, carried out a suicide attack upon the Embassy of the United States

at Dar Es Salaam, by driving a truck carrying explosives, into the proximity of the

Embassy Building where decedent was employed. By their conduct they intentionally

inflicted physical injury resulting in the death of Decedent and numerous others, and

inflicted severe emotional distress upon Kulma Ramadhani, Wengo Ramadhani, Kassim

Ramadhani, Renema Ramadhani, Upendo Ramadhani, Majaliwa Ramadhani. The

conduct of these Defendants as above described was so extreme and outrageous as to

exceed all possible bounds of decency and must be regarded as atrocious and utterly

intolerable in a civilized community. Kulma Ramadhani, Wengo Ramadhani, Kassim

Ramadhani, Renema Ramadhani, Upendo Ramadhani and Majaliwa Ramadhani. have each thereby suffered damages in the amount of twenty million dollars.

**WHEREFORE,** Plainiffs, Kulma Ramadhani, Wengo Ramadhani, Kassim Ramadhani, Renema Ramadhani, Upendo Ramadhani and Majaliwa Ramadhani. each demand judgment in the amount of **TEN MILLION DOLLARS ($10,000,000.00),** besides costs.

Date: 8/7/2008

**Respectfully submitted,**

**FAY LAW, PA**

**THOMAS FORTUNE FAY**
Unified Bar No. 23929

**ANNIE P. KAPLAN**
U.S.D.C.D.C. No. MD14548

**CARAGH GLENN FAY**
U.S.D.C.D.C. No. MD16955
601 Pennsylvania Avenue, NW
#900 - South Building
Washington, D.C. 20004
(202) 638-4534

**Attorneys for Plaintiffs**

B 08 - 1377 JDB

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

**I (a) PLAINTIFFS**

Judith Abasi Mwila, et al.                    99999

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Cape May, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Thomas Fortune Fay, Esq., Annie P. Kaplan, Esq.,
Caragh Glenn Fay, Esq.
FAY LAW,PA,601Pa.Ave.,NW,Washington,DC20004
202/589-1300

**DEFENDANTS**

The Islamic Republic of Iran, et al.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT        n/a
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:08-cv-01377
Assigned To : Bates, John D.
Assign. Date : 8/7/2008
Description: PI/Malpractice

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ◉ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

◉ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☒ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

[4]

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General**<br>☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>***(If pro se, select this deck)*** | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br>***(If pro se, select this deck)*** | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **730 Labor/Mgmt. Reporting & Disclosure Act**<br>☐ **740 Labor Railway Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **444 Welfare**<br>☐ **440 Other Civil Rights**<br>☐ **445 American w/Disabilities-Employment**<br>☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Personal injury suffered in terrorist attack. Cae brought pursuant to 28 U.S.C. Section 1605A.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** 1,000,000,000.00 | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐ NO ☒ |

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☒ NO ☐ If yes, please complete related case form.

DATE 8/7/2008    SIGNATURE OF ATTORNEY OF RECORD   *Thomas Fortune Fay*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.