**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JUDITH ABASI MWILA, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 08-1377 (JDB)** |
| **THE ISLAMIC REPUBLIC OF IRAN, et al.,** | |
| **Defendants.** | |

### MEMORANDUM OPINION[1]

Over fifteen years ago, on August 7, 1998, the United States embassies in Nairobi, Kenya and Dar es Salaam, Tanzania were devastated by simultaneous suicide bombings that killed hundreds of people and injured over a thousand. This Court has entered final judgment on liability under the Foreign Sovereign Immunities Act ("FSIA") in this civil action and several related cases—brought by victims of the bombings and their families—against the Republic of Sudan, the Ministry of the Interior of the Republic of Sudan, the Islamic Republic of Iran, and the Iranian Ministry of Information and Security (collectively "defendants") for their roles in supporting, funding, and otherwise carrying out these unconscionable acts.[2] The next step in the case is to assess and award damages to each individual plaintiff, and in this task the Court has been aided by a special master.

---

[1] The Court has redacted plaintiffs' names in both this Opinion and the Judgment filed this date—but the Court has only redacted in this case precisely as requested by plaintiffs' counsel in a related case—and unredacted versions will be filed under seal. See Owens v. Repub. of Sudan, No. 01-2244, (D.D.C. Feb. 3, 2014) Mot. for Order to Redact [ECF No. 298].

[2] Plaintiffs in some of the related actions have also sued—and the Court has entered judgment against—the Iranian Revolutionary Guard Corps.

Plaintiffs are four Tanzanian citizens injured and five estates of Tanzanian citizens killed in the Dar es Salaam bombings, as well as forty-nine immediate family members of the victims. Those injured and deceased were employees of entities that had contracts with the U.S. government, and were performing under those contracts within the scope of their employment at the U.S. Embassy in Dar es Salaam when the bombing occurred. Service of process was completed upon each defendant, but defendants failed to respond, and a default was entered against each defendant. The Court has held that it has jurisdiction over defendants and that the foreign national plaintiffs who worked for the U.S. government are entitled to compensation for personal injury and wrongful death under 28 U.S.C. § 1605A(c)(3). See Owens v. Republic of Sudan, 826 F. Supp. 2d 128, 148-51 (D.D.C. 2011). The Court has also held that, although those plaintiffs who are foreign national family members of victims lack a federal cause of action, they may nonetheless pursue claims under the laws of the District of Columbia. Id. at 153-57. A final judgment on liability was entered in favor of plaintiffs. Nov. 28, 2011 Order [ECF No. 214] 2. The deposition testimony and other evidence presented established that the defendants were responsible for supporting, funding, and otherwise carrying out the bombings in Nairobi and Dar es Salaam. See Owens, 826 F. Supp. 2d at 135-47.

The Court then referred plaintiffs' claims to a special master, John Swanson, to prepare proposed findings and recommendations for a determination of damages. Feb. 27, 2012 Order Appointing Special Masters [ECF No. 33] 2. The special master has now filed completed reports on each plaintiff, and plaintiffs have filed proposed findings of fact and conclusions of law based on those reports. See Reports of Special Master John Swanson [ECF Nos. 36-44]; Proposed Findings of Fact & Conclusions of Law [ECF No. 53]. In completing those reports, the special master relied on sworn testimony, expert reports, medical records, and other evidence. The

reports extensively describe the key facts relevant to each plaintiff and carefully analyze their claims under the framework established in mass tort terrorism cases. The Court commends John Swanson for his fine work and thorough analysis.

The Court hereby adopts all facts found by the special master relating to each plaintiff in this case. In addition, the Court adopts the special master's findings that all plaintiffs have established their employment status or their familial relationship necessary to support standing under section 1605A(a)(2)(A)(ii). See Owens, 826 F. Supp. 2d at 149. The Court also adopts all damages recommendations in the reports, with a few adjustments as described below. "Where recommendations deviate from the Court's damages framework, 'those amounts shall be altered so as to conform with the respective award amounts set forth' in the framework, unless otherwise noted." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82-83 (D.D.C. 2010) (quoting Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 53 (D.D.C. 2007) ("Peterson II"), abrogation on other grounds recognized in Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 65 (D.D.C. 2013)). As a result, the Court will award plaintiffs a total judgment of over $419 million.

## CONCLUSIONS OF LAW

On November 28, 2011, the Court granted summary judgment on liability against defendants in this case. Nov. 28, 2011 Order [ECF No. 214] 2. The foreign national U.S.-government-employee victims have a federal cause of action, while their foreign-national family members have a cause of action under D.C. law.

**I.     The Government-Employee Plaintiffs Are Entitled To Damages On Their Federal Law Claims Under 28 U.S.C. § 1605A**

"To obtain damages in a Foreign Sovereign Immunities Act (FSIA) action, the plaintiff must prove that the consequences of the defendants' conduct were reasonably certain (i.e., more

likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with application of the American rule on damages." Valore, 700 F. Supp. 2d at 83. Plaintiffs here have proven that the consequences of defendants' conduct were reasonably certain to—and indeed intended to—cause injury to plaintiffs. See Owens, 826 F. Supp. 2d at 135-46. As discussed in this Court's previous opinion, because the FSIA-created cause of action "does not spell out the elements of these claims that the Court should apply," the Court "is forced . . . to apply general principles of tort law" to determine plaintiffs' entitlement to damages on their federal claims. Id. at 157 n.3.

Survivors are entitled to recover for the pain and suffering caused by the bombings: acts of terrorism "by their very definition" amount to extreme and outrageous conduct and are thus compensable by analogy under the tort of "intentional infliction of emotional distress." Valore, 700 F. Supp. 2d at 77 (citing Restatement (Second) of Torts § 46(1) (1965)); see also Baker v. Socialist People's Libyan Arab Jamahriya, 775 F. Supp. 2d 48, 74 (D.D.C. 2011) (permitting plaintiffs injured in state-sponsored terrorist bombings to recover for personal injuries, including pain and suffering, under tort of "intentional infliction of emotional distress"); Estate of Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 153 (D.D.C. 2011) (same). Hence, "those who survived the attack may recover damages for their pain and suffering, . . . [and for] economic losses caused by their injuries. . . ." Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 55 (D.D.C. 2012) ("Oveissi II") (citing Valore, 700 F. Supp. 2d at 82-83); see 28 U.S.C. § 1605A(c). Accordingly, all plaintiffs who were injured in the 1998 bombings can recover for their pain and suffering as well as their economic damages. Bland, 831 F. Supp. 2d at 153. In addition, the estates of those who were killed in the attack are entitled to recover compensatory

damages for wrongful death. See, e.g., Valore, 700 F. Supp. at 82 (permitting estates to recover economic damages caused to deceased victims' estates).

## II.   Family Members Who Lack A Federal Cause Of Action Are Entitled To Damages Under D.C. Law

This Court has previously held that it will apply District of Columbia law to the claims of any plaintiffs for whom jurisdiction is proper, but who lack a federal cause of action under the FSIA. Owens, 826 F. Supp. 2d at 153-57. This category includes only the foreign-national family members of the injured victims from the 1998 bombings. Individuals in this category seek to recover solatium damages under D.C. law based on claims of intentional infliction of emotional distress. To establish a prima facie case of intentional infliction of emotional distress under D.C. law, a plaintiff must show: (1) extreme and outrageous conduct on the part of the defendant which, (2) either intentionally or recklessly, (3) causes the plaintiff severe emotional distress. Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002). Acts of terrorism "by their very definition" amount to extreme and outrageous conduct, Valore, 700 F. Supp. 2d at 77; the defendants in this case acted intentionally and recklessly; and their actions caused each plaintiff severe emotional distress. See Owens, 826 F. Supp. 2d at 136-45; Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 74-75 (D.D.C. 2010). Likewise, D.C. law allows spouses and next of kin to recover solatium damages. D.C. Code § 16-2701. Based on the evidence submitted to the special master, the Court concludes that the foreign national family members of the victims of the 1998 bombings have each made out their claims for intentional infliction of emotional distress and are entitled to solatium damages (with the few exceptions detailed below).

## III.   Damages

Having established that plaintiffs are entitled to damages, the Court now turns to the question of the amount of damages, which involves resolving common questions related to

plaintiffs with similar injuries. The damages awarded to each plaintiff are laid out in the tables in the separate Order and Judgment issued on this date.

###### a.   Compensatory Damages

###### 1.   Economic damages

Under the FSIA, injured victims and the estates of deceased victims may recover economic damages, which typically include lost wages, benefits and retirement pay, and other out-of-pocket expenses. 28 U.S.C. § 1605A(c). To determine each surviving plaintiff's economic losses resulting from the bombings, the special master relied on economic reports submitted by Associate Professor James M. Warner, who estimated lost earnings, fringe benefits, retirement income, and the value of household services lost as a result of the injuries sustained from the bombing. Those reports were attached to each special master report where a plaintiff suffered economic damages. In turn, Associate Professor Warner relied on information from the survivors as well as other documentation, including country-specific economic data and employment records. See, e.g., Report of Special Master, Ex. 1 [ECF No. 36-1] 2-8 (further explaining methodology employed in creating the economic loss reports). The Court adopts the findings and recommendations of the special master as to economic losses to be awarded injured victims and the estates of deceased victims.

The special master also recommended that some victims' children be awarded economic damages to compensate them for their parent's lost earning potential. Those damages, however, are not included in the category of damages recoverable by family members of victims under either the FSIA or D.C. law, as explained above, and the special master cites nothing to the contrary. Hence, the Court will adjust the special master's recommended awards accordingly.

2. <u>Awards for pain and suffering due to injury</u>

Courts determine pain-and-suffering awards for survivors based on factors including "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." <u>See</u> <u>O'Brien v. Islamic Republic of Iran</u>, 853 F. Supp. 2d 44, 46 (D.D.C. 2012) (internal quotation marks omitted). When calculating damages amounts, "the Court must take pains to ensure that individuals with similar injuries receive similar awards." <u>Peterson II</u>, 515 F. Supp. 2d at 54. Recognizing this need for uniformity, courts in this district have developed a general framework for assessing pain-and-suffering damages for victims of terrorist attacks, awarding a baseline of $5 million to individuals who suffer severe physical injuries, such as compound fractures, serious flesh wounds, and scars from shrapnel, as well as lasting and severe psychological pain. <u>See</u> <u>Valore</u>, 700 F. Supp. 2d at 84. Where physical and psychological pain is more severe—such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead—courts have departed upward from this baseline to $7 million and above. <u>See</u> <u>O'Brien</u>, 853 F. Supp. 2d at 47. Similarly, downward departures to a range of $1.5 to $3 million are warranted where the victim suffers severe emotional injury accompanied by relatively minor physical injuries. <u>See</u> <u>Valore</u>, 700 F. Supp. 2d at 84-85.

Damages for extreme pain and suffering are warranted for those individuals who initially survive the attack but then succumb to their injuries. "When the victim endured extreme pain and suffering for a period of several hours or less, courts in these [terrorism] cases have rather uniformly awarded $1 million." <u>Haim v. Islamic Republic of Iran</u>, 425 F. Supp. 2d 56, 71 (D.D.C. 2006). When the period of the victim's pain is longer, the award increases. <u>Id.</u> at 72.

And when the period is particularly brief, courts award less. For instance, where an individual "survived a terrorist attack for 15 minutes, and was in conscious pain for 10 minutes," a court in this district awarded $500,000. See Peterson, 515 F. Supp. 2d at 53.

The special master recommended pain and suffering awards to eight of the nine victims or their estates. The Court will adjust the special master's recommendations as described below to ensure consistency with prior cases and between plaintiffs in this case.[3] The special master recommended pain and suffering awards for four of the five victims killed in the bombings.[4] But the record does not support the award of pain and suffering damages to the estates of these deceased victims because it contains no evidence indicating that they suffered before succumbing to their injuries. See Oldham v. Korean Air Lines Co., Ltd., 127 F.3d 43, 56 (D.C. Cir. 1997) (in pre-death suffering cases, "the key factual dispute turns on whether the [victims] were immediately rendered unconscious" (internal quotation marks omitted)); cf. Peterson, 515 F. Supp. 2d at 53 (awarding pain and suffering damages to estates of deceased victims who initially survived terrorist attack but later died of their injuries). No one testified that any of the deceased victims survived the blast itself for any period of time, and the evidence indicates that they likely did not: John Victim Asmith was decapitated, and his head was never found; John Victim Fsmith was found "not in one piece"; John Victim Hsmith was identifiable only by DNA evidence; John Victim Ismith was "struck in the head by an iron"; and no evidence indicates the exact manner of Jane Victim Gsmith's death. See Report of Special Master John Swanson Concerning John Victim Asmith [ECF No. 36] 4; Report of Special Master John Swanson Concerning John Victim Fsmith [ECF No. 42] 5; Report of Special Master John Swanson

---

[3] The Court finds the recommended award of $5 million for pain and suffering to John Victim Csmith to be appropriate and in line with awards to similarly situated plaintiffs in this case and others.

[4] The special master does not explain why he did not recommend awarding pain-and-suffering damages to Jane Victim Gsmith, but as with the other deceased victims, an award of pain-and-suffering damages to Jane Victim Gsmith is appropriate.

Concerning John Victim Hsmith [ECF No. 37] 4; Report of Special Master John Swanson Concerning John Victim Ismith [ECF No. 43] ("Ismith Report") 5; Report of Special Master John Swanson Concerning Jane Victim Gsmith [ECF No. 40] ("Gsmith Report") 3-4. The Court is thus unable to conclude on this record that these victims were ever conscious after the blast or that they suffered in between the blast and their deaths. Hence, the Court will not award any damages for pain and suffering to the estates of the deceased victims.

The special master's report on John Victim Bsmith suggests an award of $4 million in pain and suffering, based on his extensive injuries. Report of Special Master John Swanson Concerning John Victim Bsmith [ECF No. 41] ("Bsmith Report"). The Court believes that an upward adjustment from the special master's recommendation to the baseline amount is appropriate for John Victim Bsmith. Where plaintiffs suffer severe physical injuries, such as compound fractures, serious flesh wounds, and scars from shrapnel, as well as lasting and severe psychological pain, courts generally award $5 million in pain and suffering. See Valore, 700 F. Supp. 2d at 84. John Victim Bsmith worked as a security guard at the U.S. Embassy in Dar es Salaam. Bsmith Report at 3. He only remembers experiencing the blast and then waking up in a hospital bed later that afternoon. Id. at 3-4. He suffered loss of hearing, cuts from shrapnel, spinal cord injuries, and impaired vision. Id. at 4, 10. Because of his injuries, he is no longer able to work. Id. at 5. Because his injuries are comparable to those of other plaintiffs receiving a $5 million award—in this and other cases—the Court will award $5 million to John Victim Bsmith.

The special master's report on John Victim Esmith suggests an award of $6 million in pain and suffering, based on his extensive injuries. Report of Special Master John Swanson Concerning John Victim Esmith [ECF No. 39] ("Esmith Report"). The Court believes that a downward adjustment from the special master's recommendation to the baseline amount is

appropriate for John Victim Esmith. John Victim Esmith was employed as a gardener at the U.S. Embassy in Dar es Salaam at the time of the bombing. Id. at 3. He recalls being taken to the hospital, but he does not recall the blast itself. Id. He sustained shrapnel wounds to his leg and face, a severe chest injury, and burns all over his body. Id. at 5. John Victim Esmith ultimately died of a chest infection eleven years after the bombing, but the record is insufficient to establish that the injuries sustained during the bombing caused his death. See id. at 5. As with John Victim Bsmith, the blast caused John Victim Esmith to suffer serious flesh wounds, scars from shrapnel, and lasting and severe psychological pain. Nothing, though, indicates that his injuries were so severe as to warrant an upward departure. Because his injuries are comparable to those of other plaintiffs receiving a $5 million award, the Court will award $5 million to the estate of John Victim Esmith.

The special master's report on John Victim Dsmith suggests an award of $5 million in pain and suffering, based on his injuries. Report of Special Master John Swanson Concerning John Victim Dsmith [ECF No. 44]. The Court believes that a downward adjustment from the special master's recommendation is also appropriate for John Victim Dsmith. John Victim Dsmith was a security guard at the U.S. Embassy in Dar es Salaam at the time of the bombing. Id. at 2. When the bombing occurred, he was far enough away that he was not affected by the blast itself, but he heard the blast and saw people running away from the blast site. Id. at 3. When trying to get a better vantage point to see what had happened, he climbed up to the first floor of the building, but a stampede of people forced him to jump into a nearby tree. Id. at 3. The branch on which he was standing broke, and he suffered injuries from the fall. Id. at 4. Nevertheless, he proceeded to the bomb site and aided the rescue efforts. Id. As a result of the bombing and its aftermath, he suffered back and leg injuries, loss of hearing, and vision and respiratory problems.

Id. at 4-5. The record reflects lasting and severe psychological pain for John Victim Dsmith. But in light of his relatively less severe physical injuries when compared to plaintiffs who were injured by the bomb blast itself, a downward departure from the baseline is appropriate. For instance, in Valore, another judge in this district awarded $1.5 million where a plaintiff was knocked to the ground by a bomb blast, and suffered severe emotional turmoil from helping survivors. See Valore, 700 F. Supp. 2d at 84-85; see also Peterson II, 515 F. Supp. 2d at 55 (departing downward to $2 million where plaintiff experienced "nerve pain and foot numbness" as well as "lasting and severe psychological problems" from the attack). John Victim Dsmith suffered physical injuries during the bombing's aftermath and during his admirable rescue efforts, and his injuries are more severe than those of the plaintiff in Valore. Accordingly, the Court will award $2.5 million to John Victim Dsmith for pain and suffering.

3.    Solatium

"In determining the appropriate amount of compensatory damages, the Court may look to prior decisions awarding damages for pain and suffering, and to those awarding damages for solatium." Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15, 29 (D.D.C. 2008). Only immediate family members—parents, siblings, spouses, and children—are entitled to solatium awards. See Valore, 700 F. Supp. 2d at 79. The commonly accepted framework for solatium damages in this district is that used in Peterson II, 515 F. Supp. 2d at 52. See Valore, 700 F. Supp. 2d at 85; Belkin, 667 F. Supp. 2d at 23. According to Peterson II, the appropriate amount of damages for family members of deceased victims is as follows: $8 million to spouses of deceased victims, $5 million to parents of deceased victims, and $2.5 million to siblings of deceased victims. 515 F. Supp. 2d at 52. The appropriate amount of damages for family members of injured victims is as follows: $4 million to spouses of injured victims, $2.5 million

to parents of injured victims, and $1.25 million to siblings of injured victims. Id. Courts in this district have differed somewhat on the proper amount awarded to children of victims. Compare Peterson II, 515 F. Supp. 2d at 51 ($2.5 million to child of injured victim), with Davis v. Islamic Republic of Iran, 882 F. Supp. 2d 7, 14 (D.D.C. 2012) ($1.5 million to child of injured victim). The Court finds the Peterson II approach to be more appropriate: to the extent such suffering can be quantified, children who lose parents are likely to suffer as much as parents who lose children.

Although these amounts are guidelines, not rules, see Valore, 700 F. Supp. 2d at 86, the Court finds the distinctions made by the Valore court to be responsible and reasonable, and hence it will adopt the same guidelines for determining solatium damages here. In the interests of fairness and to account for the difficulty in assessing the relative severity of each family member's suffering, in this case and in related cases, the Court will not depart from those guidelines for any individual plaintiff except one: the Court agrees with the special master that awarding $4 million to John Sibling1 Ismith—rather than the $2.5 million typically awarded to siblings of deceased victims—is appropriate because of the closer-than-normal sibling relationship he shared with his twin brother, deceased victim John Victim Ismith. See Ismith Report at 2-4.

The Court finds that the special master has appropriately applied the solatium damages framework to many of the plaintiffs in this case, and will adopt his recommendations with the exceptions described below. Other courts in this district have held that it is inappropriate for the solatium awards of family members to exceed the pain-and-suffering awards of surviving victims. See Davis, 882 F. Supp. 2d at 15; O'Brien, 853 F. Supp. 2d at 47; Bland, 831 F. Supp. 2d at 157. This Court agrees and will follow that approach here. The special master recommended a solatium award to Jane Spouse Dsmith that exceeds the pain-and-suffering

award to her husband. Consequently, the Court will reduce her award from $5 million to $2.5 million to match her husband's pain-and-suffering award.

For the most part, the special master recommended that the family members of those killed in the bombings receive awards consistent with family members of <u>injured</u> victims. The Court will therefore adjust those awards to accord with the guidelines in <u>Peterson</u>.[5] <u>See</u> 515 F. Supp. 2d at 52. The special master also recommended that Jane Sibling1 Esmith, the sister of the injured victim John Victim Esmith, receive $2.5 million, but as an injured victim's sister she is entitled to a solatium award of $1.25 million. The Court will adjust her award accordingly.

The special master also recommended the award of solatium damages to some injured victims' children who were born after the bombings occurred. While the Court acknowledges that the bombings' terrible impact on the victims and their families continues to this day, in similar cases courts have found that children born following terrorist attacks are not entitled to damages under the FSIA. <u>See</u> <u>Davis v. Islamic Republic of Iran</u>, 882 F. Supp. 2d 7, 15 (D.D.C. 2012); <u>Wultz v. Islamic Republic of Iran</u>, 864 F. Supp. 2d 24, 36 (D.D.C. 2012). In holding that a plaintiff must have been alive at the time of an attack to recover solatium damages, the <u>Davis</u> court recognized the need to draw lines in order to avoid creating "an expansive and indefinite scope of liability" under the FSIA—for example, liability to children born fifteen years after an attack (a real possibility in this drawn-out litigation). 882 F. Supp. 2d at 15. The Court agrees

---

[5] Accordingly, the Court will increase the awards to the following plaintiffs: Jane Spouse Asmith, from $4 million to $8 million; John Child1 Asmith, from $2.5 million to $5 million; Jane Child2 Asmith, from $2.5 million to $5 million; Jane Child3 Asmith, from $2.5 million to $5 million; Jane Spouse Fsmith, from $4 million to $8 million; Jane Child1 Fsmith, from $2.5 million to $5 million; Jane Child2 Fsmith, from $2.5 million to $5 million; John Child3 Fsmith, from $2.5 million to $5 million; Jane Child4 Fsmith, from $2.5 million to $5 million; John Child5 Fsmith, from $2.5 million to $5 million; John Child6 Fsmith, from $2.5 million to $5 million; John Child2 Gsmith, from $2.5 million to $5 million; Jane Child1 Gsmith, from $2.5 million to $5 million; John Spouse Gsmith, from $4 million to $8 million; Jane Spouse Hsmith, from $4 million to $8 million; John Child1 Hsmith, from $2.5 million to $5 million; John Child2 Hsmith, from $2.5 million to $5 million; Jane Child3 Hsmith, from $2.5 million to $5 million; John Child4 Hsmith, from $2.5 million to $5 million; Jane Parent1 Hsmith, from $2.5 million to $5 million; and John Child1 Ismith, from $2.5 million to $5 million.

with the <u>Davis</u> court's interpretation of the FSIA and holds that those plaintiffs not alive at the time of the bombings cannot recover solatium damages.[6] Hence, the Court dismisses the claims of the following plaintiffs: Jane Child3 Bsmith (born in 1999), Jane Child5 Bsmith (born in 2001), John Child6 Bsmith (born in 2001), Jane Child5 Csmith (died in 1983), John Child4 Dsmith (born in 2001), and John Child5 Dsmith (born in 2003). <u>See</u> Bsmith Report at 6, 14; Report of Special Master John Swanson Concerning John Victim Csmith [ECF No. 38] 3; Report of Special Master John Swanson Concerning John Victim Dsmith [ECF No. 44] 6.

The special master also recommends, based on the evidence, that no damages be awarded to Jane Spouse Esmith, John Ismith, or Jane Ismith, and the Court adopts those recommendations because the record does not contain sufficient evidence to support the award of any damages to those plaintiffs. Esmith Report at 11; Ismith Report at 11.

### b.    Prejudgment Interest

An award of prejudgment interest at the prime rate is appropriate in this case. <u>See</u> <u>Oldham</u>, 127 F.3d at 54; <u>Forman v. Korean Air Lines Co., Ltd.</u>, 84 F.3d 446, 450-51 (D.C. Cir. 1996). Prejudgment interest is appropriate on the whole award, including pain and suffering and solatium, with one exception. <u>See</u> <u>Reed v. Islamic Republic of Iran</u>, 845 F. Supp. 2d 204, 214-15 (D.D.C. 2012) (awarding prejudgment interest on the full award). <u>But see</u> <u>Oveissi v. Islamic Republic of Iran</u>, 768 F. Supp. 2d 16, 30 n.12 (D.D.C. 2011) (declining to award prejudgment interest on solatium damages). Because the economic loss figures recommended by the special master have already been adjusted to reflect present discounted value, <u>see</u> <u>District of Columbia v. Barritaeu</u>, 399 A.2d 563, 568-69 (D.C. 1979), the Court will not apply the prejudgment interest multiplier to the economic loss amounts. <u>See</u> <u>Doe</u>, 943 F. Supp. 2d at 186 (citing <u>Oldham</u>, 127 F.3d at 54); <u>see, e.g.</u>, Special Master Report Ex. 1 [ECF No. 36-1] 8. Awards for pain and

---

[6] This makes sense because such a plaintiff has not actually lost a parent in the bombing.

suffering and solatium are calculated without reference to the time elapsed since the attacks. Because plaintiffs were unable to bring their claims immediately after the attacks, they have lost use of the money to which they were entitled upon incurring their injuries. Denying prejudgment interest on these damages would allow defendants to profit from the use of the money over the last fifteen years. Awarding prejudgment interest, on the other hand, reimburses plaintiffs for the time value of money, treating the awards as if they were awarded promptly and invested by plaintiffs.

The Court will calculate the applicable interest using the prime rate for each year. The D.C. Circuit has explained that the prime rate—the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest, one "more appropriate" than more conservative measures such as the Treasury Bill rate, which represents the return on a risk-free loan. See Forman, 84 F.3d at 450. Although the prime rate, applied over a period of several years, can be measured in different ways, the D.C. Circuit has approved an award of prejudgment interest "at the prime rate for each year between the accident and the entry of judgment." See id. at 450. Using the prime rate for each year is more precise than, for example, using the average rate over the entire period. See Doe, 943 F. Supp. 2d at 185 (noting that this method is a "substantially more accurate 'market-based estimate'" of the time value of money (citing Forman, 84 F. 3d at 451)). Moreover, calculating interest based on the prime rate for each year is a simple matter.[7] Using the prime rate for each year results in a

---

[7] To calculate the multiplier, the Court multiplied $1.00 by the prime rate in 1999 (8%) and added that amount to $1.00, yielding $1.08. Then, the Court took that amount and multiplied it by the prime rate in 2000 (9.23%) and added that amount to $1.08, yielding $1.17968. Continuing this iterative process through 2014 yields a multiplier of 2.26185.

multiplier of 2.26185 for damages incurred in 1998.[8] Accordingly, the Court will use this multiplier to calculate the total award.[9]

### **CONCLUSION**

The 1998 embassy bombings shattered the lives of all plaintiffs in this case. Reviewing their personal stories reveals that, even more than fifteen years later, they each still feel the horrific effects of that awful day. Damages awards cannot fully compensate people whose lives have been torn apart; instead, they offer only a helping hand. But that is the very least that these plaintiffs are owed. Hence, it is what Court will facilitate.

A separate Order consistent with these findings has issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  March 28, 2014

---

[8] The Court calculated the multiplier using the Federal Reserve's data for the average annual prime rate in each year between 1998 and 2014. See Bd. of Governors of the Fed. Reserve Sys. Historical Data, available at http://www.federalreserve.gov/releases/h15/data.htm (last visited March 28, 2014). As of the date of this opinion, the Federal Reserve has not posted the annual prime rate for 2014, so the Court will conservatively estimate that rate to be 3.25%, the rate for the previous six years.

[9] The product of the multiplier and the base damages amount includes both the prejudgment interest and the base damages amount; in other words, applying the multiplier calculates not the prejudgment interest but the base damages amount plus the prejudgment interest, or the total damages award.